FRUGÉ, Judge.
This is a suit by the plaintiff landowner for damages allegedly resulting from the defendant altering the natural flow or drainage of water across the latter’s lower estate. Coupled with this action is a demand for the removal of certain levee structures placed by the defendant on his land, which plaintiff contends blocks or impedes the natural servitude of drain. From a judgment in favor of the defendant, dismissing plaintiff’s demands, plaintiff has appealed.
J. A. Pickett, Sr. is the owner of a certain 40 acre tract of land located in northern St. Landry Parish, Louisiana. Said tract is bounded on the north by property of Lester Fogleman, on the east by property of Oren Summers (primarily composed of swampland), on the south by property of Hershel Hagger and on the west by an 80 acre tract also owned by the plaintiff. Pickett farms a major portion of the abovementioned acreage which he owns and additionally leases for farming approximately 800 acres to the south of his property (which includes the aforementioned Hershel Hagger tract).
The defendant, Ray Taylor, is the owner of an approximately 150 acre tract of land which lies directly northeast of plaintiff’s 40-acre tract. The two properties adjoin or touch at one corner, that being plaintiff’s northeast and the defendant’s southwest. Taylor’s property is also bounded by the Lester Fogleman tract (on the west) and to the south by property of Oren Summers and Mrs. W. C. Scott. Most of this area directly to the south is part of a low, swampy area, termed by many of the local residents as “Black Stump Swamp”.
Prior to 1973 the southern portion of defendant’s property (approximately 50 to 75 acres) was inundated with waters forming part of the large swampy area to the south. Late in 1972 or early 1973 the defendant constructed a three to five foot earthen levee along the southern boundary of his property, thereafter turning and running north along the western boundary (adjacent to Lester Fogleman’s property) for approximately 800 to 1000 feet. A drainage ditch was also constructed on the *780 outside of the levee structure along defendant’s western boundary, thereafter turning at the southwest corner running a short distance to the east.
Plaintiff subsequently filed suit in December, 1973, contending essentially that during the 1973 farming year he lost approximately 150 acres of planted soybeans due to the aforementioned levee causing water to “back up” and flood a portion of the land owned and leased by him. He further alleged that the natural drain of these lands was in a northeast direction onto defendant’s property and that defendant was thus obligated to receive the waters in their natural course and could not divert their flow by erection of the levee and construction of a diversion drainage ditch.
Defendant answered alleging that plaintiff’s “lands” (both leased and owned) were actually located in a watershed which drains in a southerly direction (while defendant’s property was in a northerly draining watershed) and that the levee was constructed to prevent the flow of backwater from the swamp onto his lands and in no way prevented, or blocked, the natural flow of water from other property. He further contended that plaintiff’s alleged crop losses were caused by excessive and unprecedented rainfall during 1973 and the fact that plaintiff attempted to plant the crops in a submarginal or swampland area lacking adequate drainage.
Following a trial on the merits the district judge concluded essentially that Pickett’s crop loss was occasioned by excessive rainfall and swamp “back-up” and not by defendant’s man-made activities. He further found the general drain of the area to be south, with intermediate drainage east towards “Black Stump Swamp”. The bulk of plaintiff’s drainage, on the other hand, he concluded, was to the east, but if water in fact flowed northeast from plaintiff’s to defendant’s lands, (a) such drainage was inconsequential, (b) defendant was fulfilling his duty by diverting the water to its natural destination, (c) the levee had little or nothing to do with interference of said drainage, and (d) the most damage defendant might have caused was the inconsequential, minor, and temporary overflow of the outside drainage ditch.
Two issues are presented on this appeal: (1) Whether plaintiff’s property is the upper (and defendant’s the lower) estate within the purview of LSA-C.C. art. 660, with defendant thus owing the plaintiff a natural servitude of drain across his land. (2) If the servitude is owed, whether the defendant obstructed the natural flow of the water and, therefore, must remove the levee (or portions thereof) and/or is responsible for alleged damages due as a result of crop losses.
Louisiana Civil Code Art. 660 provides the following:
“It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
“The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
“The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.”
In this regard, the evidence presented in the present case indicates (as concluded by the trial judge) that drainage of the general area in question is from north to south.
The test for determining if such a servitude is due, however, is not whether the overall, general area drains in a certain direction or whether an estate is overall higher than another. Article 660 contemplates a natural servitude of drain along particular points of a boundary between lands, attaching where one estate is upper *781 to the other and drainage results over the latter. Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972).
The record herein reveals that the land owned by defendant Taylor (and his predecessors in title) contained a number of man-made canals or ditches which drained a portion of his and surrounding lands to the north into Bayou Rouge. This drainage system included group ditches between Taylor’s property and that owned by Lester Fogleman and Oren Summers. These ditches gathered water and transported it north into the aforementioned bayou. Expert testimony indicated that in the absence of this man-made canal system the area would have drained south into the swampland.
The record indicates that the bulk of Pickett’s lands drain in a southerly direction or to the east into the swamp area. Pickett contends however that on the north end of his property a ditch channels water to the northeast over his land and that of Lester Fogleman to Taylor’s land.
As noted by the trial judge, according to a survey made by David Stelly, the drop in this “ditch” where it leaves Pickett’s property (across Fogleman’s property) to Taylor’s property line is less than a foot in a quarter of a mile. According to a survey made by Avie Gremillion there is no drop at all in this quarter of a mile stretch.
The testimony indicates that there is some drainage from Pickett’s owned and leased lands onto Taylor’s. The defendant admits that there is some drainage onto his land but contends that the western boundary ditch constructed outside his levee system takes care of this water by diverting it around his property to the swampland area where it would have eventually flowed were it not for the levee.
' The record indicates that the Black Stump Swamp area is east of plaintiff’s land and south of defendant’s property. The water on Pickett’s land flowed northeast onto Taylor’s land and then drained to the south into the swamp. The levee was built by Taylor primarily to prevent water from the swamp from backing up onto his property and to allow him to drain the southern end of his property to the north (against the natural drainage flow) through the ditches which Taylor constructed at his own expense.
From our reading of the record we agree with the findings of the trial judge that any drainage from Pickett’s land onto Taylor’s was of a fairly insignificant amount. While this does make Pickett’s estate the upper estate under Article 660, see Poole v. Guste, supra, it appears to us that Taylor is receiving the water he must under the servitude and channelling it to its eventual natural destination in the swamp through the ditch on the outside of his levee.
It may be that had Taylor not constructed the levee Pickett’s lands may have drained better because of the ditches dug by Taylor to take water to the north. Pickett, however, cites no rule of law by which he would be entitled to the benefit of use of these ditches (the earliest of which was constructed in 1955 or 1956). Taylor’s only duty is to accept waters flowing naturally onto his land; we find as did the trial judge, that he is doing so by virtue of the ditch outside the levee on the west side of his property.
Finally, we note that in 1973 Pickett did lose some of his soybean crop because of water backing up onto his property. The trial court concluded that this loss was the result of excessive rainfall in 1973 and was not caused by the levee. We note that according to the testimony of Gremillion, there was no water on Pickett’s side of the levee (except in the ditch) when he surveyed the area a few weeks prior to trial. This would indicate that Pickett’s land was draining through the ditch and that the backup of water in 1973 was due to excessive rainfall.
*782 For the reasons assigned the judgment of the trial court is affirmed at plaintiff-appellant’s cost.
Affirmed.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.